IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID IRWIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 1:14cv557 |
| v. | ) |
| | ) |
| FEDERAL EXPRESS CORP., d/b/a | ) |
| FEDEX EXPRESS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This case involves multiple claims by David Irwin arising from his termination by Defendant Federal Express Corporation ("FedEx"). Before the court is FedEx's motion to dismiss two of them: the complaint's claims for fraud and constructive fraud. (Doc. 3.) For the reasons set forth below, the motion is denied as to the former but granted as to the latter.

**I. BACKGROUND**

In 1999, FedEx acquired an air freight forwarding company that was then renamed Caribbean Transportation Services ("CTS"). (Compl. ¶ 5.) Irwin was one of CTS's three officers and, after the acquisition, became its senior vice president. (Id.)

Around June 1, 2009, FedEx merged with CTS, turning CTS into another division of FedEx, now named FedEx Latin America. (Id. ¶ 6.) As a result of the merger, many positions were eliminated — including Irwin's. (Id.) Irwin began negotiating

a severance package with FedEx but stopped when the president of FedEx Latin America asked him to remain employed as managing director of Caribbean operations, which Irwin did.  (Id.)

In February 2013, FedEx drafted, and Irwin signed, an employment agreement.  (Id. ¶ 8.)  Under the agreement, Irwin committed to continue working for FedEx until November 30, 2013, and not to compete against FedEx for one year following the end of his employment.  (Id.)  In return, FedEx agreed to pay Irwin approximately $275,000.00 upon his departure.  (Id. ¶¶ 8, 14.)  The employment agreement also contained the following provision, section 13(n), allowing FedEx to terminate Irwin's employment unilaterally:  "[I]f after executing this Agreement, but prior to the effective date, [Irwin] engages in conduct or has performance deficiencies that would normally result in termination, he will be terminated and his Agreement will be null and void."  (Id. ¶ 18.)  The agreement did not define what conduct would "normally result in termination."  (Id. ¶ 19.)  Irwin signed this agreement after his supervisor, Julio Columba, told him that FedEx "would likely be going through a restructuring process" and that Irwin's employment "may be in immediate jeopardy if the agreement was not signed."  (Id. ¶ 8.)

Later, FedEx tried to persuade Irwin to abandon the

2

agreement. In the summer of 2013, a FedEx agent[1] asked Irwin to terminate his employment on August 31, 2013, rather than November 30, 2013, the latter of which accorded with the terms of the employment agreement. (Id. ¶ 9.) Irwin was told that this request came because of FedEx's "desire to achieve salary cost savings." (Id.) This agent told Irwin that "if he accepted the offer, his Employment Agreement would be honored." (Id.) Irwin refused this offer to ensure a "smooth management transition." (Id.)

On October 31, 2013, Irwin's manager asked him to attend a meeting on the next day, which Irwin thought could be for a retirement party. (Id. ¶ 10.) As it turned out, that next day Irwin was told that he was being suspended. (Id.) He was not provided a reason. (Id.) Two weeks later, on November 15, Irwin was called into his office to meet with two auditors. (Id. ¶ 11.) The auditors asked him about events occurring "nearly five years earlier." (Id.) Irwin explained that he was not involved in the issues they raised. (Id.)

Shortly thereafter, on November 27, FedEx told Irwin that he would be fired, effective November 29, 2013. (Id. ¶ 12.) FedEx also informed Irwin that the employment agreement was "null and void in its entirety." (Id.) FedEx did not cite any

---

[1] Irwin's complaint does not name this agent. (See id. ¶ 9.)

"facts or evidence" for terminating Irwin or for declaring the agreement void. (Id. ¶ 13.) The company relied on the above-quoted section 13(n) of the employment agreement for the termination. (Id. ¶ 18.) Irwin denies ever having engaged in conduct that would "normally result in termination" under the terms of the agreement. (Id. ¶¶ 19-20.)

Irwin sought to review the evidence supporting his alleged misconduct so he could respond, because he had so far carried "an unblemished record, with no prior warnings or write-ups of any kind." (Id. ¶ 15.) FedEx refused; Irwin then filed internal appeals, which FedEx denied. (Id. ¶¶ 16-17.) According to Irwin, had he worked for one more day, he would have been entitled to $275,000 in compensation under the employment agreement. (Id. ¶ 14.)

Irwin alleges that he has honored all of his obligations under the employment agreement and that FedEx has wrongfully refused to honor its own. (Id. ¶ 21.) He brought suit initially in the superior court of Guilford County, North Carolina. (Doc. 1.) FedEx removed the action to this court based on diversity jurisdiction. (Id.) In his complaint, Irwin alleges seven claims for relief: two claims for breach of the employment contract; two claims for violations of North Carolina's Wage and Hour Act; one violation of North Carolina's Unfair and Deceptive Trade Practices Act; fraud; and

4

constructive fraud. FedEx now moves to dismiss Irwin's fraud (fourth claim for relief) and constructive fraud (seventh claim for relief) claims pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted).

This standard, along with Rule 8(a)(2) requiring only "a short and plain statement of the claim," generally governs the specificity needed for pleadings. But in cases alleging fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Procedurally, a

5

failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999). Rule 9(b) serves several policy objectives: "to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013).

The heightened standard of Rule 9(b) has certain minimum requirements for the pleader. To meet this standard, the plaintiff must sufficiently describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison, 176 F.3d at 784). This minimum factual description is "often referred to as the who, what, when, where, and how of the alleged fraud." Id. (internal quotation marks omitted). However, these facts need not be the ones explicitly designated under the headings of a plaintiff's claims for relief. Rather, in cases where a fraud claim incorporates by reference all of the prior allegations in a complaint, the entire complaint is examined to determine

6

whether the pleading requirements of Rule 9(b) are satisfied. Adkins v. Crown Auto, Inc., 488 F.3d 225, 232 (4th Cir. 2007).

Rule 9(b)'s heightened pleading requirement applies to State law claims litigated in federal court. U.S. ex rel. Palmieri v. Alpharma, Inc., 928 F. Supp. 2d 840, 853 (D. Md. 2013) (citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009)). This case, which was removed from North Carolina State court, is based on diversity jurisdiction and relies on State-law claims. The parties agree that Irwin's fraud claim is subject to Rule 9(b). (Doc. 4 at 4-5; Doc. 12 at 5.) They disagree, however, on whether a heightened pleading standard also applies to the constructive fraud claim; FedEx argues that it does, and Irwin contends it does not. (Doc. 12 at 12.)

FedEx is correct: A claim for constructive fraud arising under North Carolina law is governed by Rule 9(b)'s heightened pleading standard. See Lawley v. Liberty Mut. Grp., Inc., No. 5:11-CV-00106-RLV, 2012 WL 4513622, at *5 (W.D.N.C. Sept. 28, 2012) (applying Rule 9(b) to North Carolina constructive fraud claim); Ahmed v. Porter, No. 1:09CV101, 2009 WL 2581615, at *20 (W.D.N.C. June 23, 2009) (same); Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP, 394 F. Supp. 2d 762, 772 (M.D.N.C. 2005) (same); see also, e.g., Hunt v. Calhoun Cnty. Bank, Inc., 8 F. Supp. 3d 720, 731 (2014) (applying Rule 9(b) to Virginia

7

constructive fraud claim); Brown v. Partipilo, No. 1:10CV110, 2011 WL 1562908, at *6 (N.D.W. Va. Apr. 22, 2011) (applying Rule 9(b) to West Virginia constructive fraud claim); Frank v. Branch Banking & Trust Co., No. CIV. AMD 05-1292, 2006 WL 4396131, at *2 (D. Md. Jan. 19, 2006) (applying Rule 9(b) to Maryland constructive fraud claim), aff'd sub nom. Frank v. Branch Banking & Trust Co., 191 F. App'x 180 (4th Cir. 2006).[2] This is because actual fraud and constructive fraud are but two ways to deceive. Like actual fraud, a claim for constructive fraud risks a defendant's "goodwill and reputation"; the claim also risks confusion unless defendants have "fair notice of claims against them and the factual ground upon which they are based." McCauley, 710 F.3d at 559.

While the particularity requirement is governed by Federal Rule of Civil Procedure 9(b), substantive State law governs the elements necessary to meet the standard. See Higgins v. Spence & Spence, P.A., No. 5:07-CV-33-D, 2008 WL 506187, at *5 (E.D.N.C. Feb. 21, 2008) ("Thus, while the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies in name, the court's actual inquiry under Rule 9(b)

---

[2] This is consistent with the approach taken by North Carolina courts, which interprets North Carolina Rule of Civil Procedure 9(b) as a "counterpart" to the federal rule. Terry v. Terry, 273 S.E.2d 674, 678 (N.C. 1981) (holding that claims for constructive fraud require heightened pleading, although the standard is less rigorous than that for actual fraud).

8

focuses on the elements of the claim under substantive state law." (citation omitted)); Nakell, 394 F. Supp. 2d 762, 772 (M.D.N.C. 2005) ("However, the law of the state in which the Court sits will control the content of the elements of the fraud claim. The specificity of the allegations as required by state law affects the pleading requirements under Rule 9(b)." (citation omitted)); 5A Charles A. Wright et al., Federal Practice and Procedure § 1297 (3d ed. 2004) ("When the governing fraud law is less stringent than the traditional law of fraud, therefore, not all of the elements outlined above need to be pleaded, and the application of Rule 9(b) must be adjusted accordingly." (footnote omitted)).

Under North Carolina law, the heightened standard for constructive fraud is met when the plaintiff describes the circumstances "(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Terry, 273 S.E.2d at 679 (quoting Rhodes v. Jones, 61 S.E.2d 725, 725 (N.C. 1950)); see also Lawley, 2012 WL 4513622, at *5 (holding that a claim for constructive fraud under North Carolina law is subject to Rule 9(b), but that this "pleading standard is less exacting than with actual fraud claims since there is no misrepresentation requirement").

9

**B. Fourth Claim for Relief: Actual Fraud**

In North Carolina, a claim for actual fraud has five elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 391 (N.C. 1988) (quoting Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974)). Although Irwin's allegations directly under the heading of his fourth claim for relief (Compl. ¶¶ 43–51) do not meet the particularity requirements of Rule 9(b), his claim incorporates by reference all preceding paragraphs (Compl. ¶ 42), which the court must consider in determining whether the heightened pleading standard has been met. See Adkins, 488 F.3d at 232.

Irwin argues that he sufficiently pled a material misrepresentation by describing the employment agreement between himself and FedEx, in which FedEx promised to compensate him in the form of $275,000 in exchange for his promise to continue working for FedEx and not to compete when he leaves. (Doc. 12 at 9; Compl. ¶ 8.) This was a promissory representation, "looking to the future." McCormick v. Jackson, 183 S.E. 369, 370 (N.C. 1936) (per curiam). A promissory representation is not actionable fraud unless "it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no

intent to comply." Johnson v. Phoenix Mut. Life Ins. Co., 266 S.E.2d 610, 616 (N.C. 1980), questioned in part on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 392 (N.C. 1988). Irwin argues that his promissory fraud theory is actionable under the rule in Johnson. (Doc. 12 at 7.)

For this claim to survive a motion to dismiss for failure to state a claim, Irwin must sufficiently describe the circumstances showing that FedEx had no intent to perform under the employment agreement. He generically alleges this, on information and belief, in his complaint at paragraph forty-six, but this, alone, is insufficient under Rule 9(b). N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co., 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010) (requiring that allegations subject to Rule 9(b) that are pled on information and belief provide the information relied on or the "plausible reasons" for the plaintiff's belief). Thus, the court must look to other paragraphs incorporated by reference.

The court finds as sufficient three specific bases of support for this allegation. First, Irwin alleges that he was fired on November 29, 2013, just one day before he would have been entitled to compensation under the employment agreement (Compl. ¶¶ 12, 14.), which plausibly suggests that FedEx wanted to avoid its obligations under the employment agreement.

11

Second, he alleges that FedEx fired him for conduct that occurred five years before he signed the employment agreement (id. ¶¶ 11–13), despite the fact that he had not engaged in any misconduct (id. ¶¶ 15, 20).[3] This raises a plausible inference that his dismissal was pretextual and that FedEx was sandbagging all along. Third, Irwin also alleges that he was approached by a FedEx agent seeking to induce Irwin into terminating his employment early because of FedEx's "desire to achieve salary cost savings" (Compl. ¶ 9.), which provides a plausible motivation for FedEx to avoid its obligations under the agreement.

Taken together, these circumstances show, with sufficient particularity, that FedEx made a false representation of a material fact, reasonably calculated to deceive, and with the intent to deceive because FedEx never intended to honor its promises. Because Irwin signed the employment agreement (id. ¶ 8) and allegedly forewent other valuable employment opportunities (id. ¶ 49), the other elements of actual deception and injury are also met. Identifying FedEx generally as the person making the material misrepresentation in the contract satisfies Rule 9(b)'s "who" requirement. See McCauley, 710 F.3d

---

[3] Because this is a motion to dismiss for failure to state a claim, Irwin's allegations of his own good behavior are presumed true. See Francis, 588 F.3d at 192.

at 559.

Thus, Irwin's claim for actual fraud survives a motion to dismiss for failure to state a claim. The "who, what, when, where, and how" of the alleged fraud are described with sufficient particularity to help FedEx prepare a defense, and the allegations convince the court that Irwin has "substantial prediscovery evidence" of those facts. Harrison, 176 F.3d at 784.

**C. Seventh Claim for Relief: Constructive Fraud**

A claim for constructive fraud under North Carolina has three elements: (1) a relationship of trust and confidence; (2) of which the defendant took advantage in order to benefit himself; (3) which resulted in harm to the plaintiff. White v. Consol. Planning, Inc., 603 S.E.2d 147, 156 (N.C. Ct. App. 2004). Unlike actual fraud, constructive fraud does not require proof of a "specific misrepresentation" or "intent to deceive." Forbis v. Neal, 649 S.E.2d 382, 388 (N.C. 2007). As noted earlier, because the claim is subject to Rule 9(b)'s heightened pleading requirements, Irwin must describe the facts and circumstances "(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Terry, 273 S.E.2d at 679 (quoting Rhodes v. Jones,

13

61 S.E.2d 725, 725 (N.C. 1950)).

A relationship of trust and confidence, also known as a fiduciary relationship, has been broadly defined by the North Carolina courts as one in which

> there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . and it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

Dalton v. Camp, 548 S.E.2d 704, 707-08 (N.C. 2001) (internal quotation marks and brackets omitted). As the Dalton court went on to explain, "the broad parameters accorded the term have been specifically limited in the context of employment situations. Under the general rule, 'the relation of employer and employee is not one of those regarded as confidential.'" Id. at 708 (citations omitted); see also Bonham v. Wolf Creek Acad., 767 F. Supp. 2d 558, 567 (W.D.N.C. 2011) ("Further, even the legal conclusion that a fiduciary relationship sprang from an employer-employee relationship finds no support in North Carolina law . . . ."); Austin Maint. & Const., Inc. v. Crowder Const. Co., 742 S.E.2d 535, 542 (N.C. Ct. App. 2012) ("[I]n the absence of some unusual set of facts that would suffice to differentiate the relationship between Plaintiff and Mr. Lanier from other employer-employee relationships, Mr. Lanier did not

14

have a fiduciary relationship with Plaintiff.").

FedEx cites various cases that apply this general rule and find no fiduciary relationship between employers and employees. (Doc. 4 at 9.) In his response, Irwin does not point to any case where a North Carolina court has found a fiduciary relationship between an employer and an employee. (See Doc. 14 at 10–13.) And this court's own research yielded no cases helpful to Irwin.

But, even assuming (without deciding) that a fiduciary relationship between an employer and employee is theoretically possible under North Carolina law on a constructive fraud claim, Irwin fails to meet the heightened pleading standard to make one plausible here. First, Irwin does not plead any facts showing a fiduciary relationship between him and FedEx; his mere "[a]llegations that a fiduciary relationship existed or that a relationship of trust and confidence existed is a legal conclusion, which is not entitled to an assumption of truth on a motion to dismiss." Lawley, 2012 WL 4513622, at *6. Nor does he plead any "unusual set of facts" transforming this general employer-employee relationship into one of a fiduciary. Austin Maint. & Const., 742 S.E.2d at 542.

Irwin claims that his supervisor "held a position of trust and confidence" with him. (Doc. 14 at 12.) But the allegations of the complaint do not bear out this legal conclusion. For

example, there is no suggestion that FedEx exercised "domination and influence" over him or "figuratively [held] all the cards" in the relationship. Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A., 730 S.E.2d 763, 767 (N.C. Ct. App. 2012) (citations omitted). Indeed, the facts suggest otherwise as Irwin alleges that he chose to forego other job opportunities. (Compl. ¶ 74.) And although Irwin's position had been eliminated at FedEx, this did not automatically convert Irwin's supervisor into Irwin's confidant. Irwin has pled no reason why FedEx should be "bound to act in good faith and with due regard" to Irwin's interests apart from that of a normal employer. Dalton, 548 S.E.2d at 707 (quoting Abbitt v. Gregory, 160 S.E. 896, 906 (N.C. 1931)). Thus, Irwin's claim for constructive fraud fails to state a claim upon which relief can be granted and should be dismissed.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that FedEx's motion to dismiss under Rule 12(b)(6) is GRANTED as to Irwin's seventh claim for relief (constructive fraud), which is DISMISSED without prejudice, and is otherwise DENIED.

                                        /s/   Thomas D. Schroeder
                                United States District Judge

November 4, 2014